UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUBPOENA SERVED ON UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT | CASE NO. 18-MC-_____ |

### MOVANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS SERVED ON UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT

On March 7, 2019, ARCO INGENIEROS S.A. de C.V. ("ARCO") caused a document and deposition subpoena (the "Subpoenas") to each be served on the United States Agency for International Development ("USAID"). The Subpoenas relate to a project in which USAID engaged ARCO to serve as the design-build contractor to rebuild schools and a health clinic destroyed by Tropical Storm Ida in El Salvador (the "Project"). The requested documents and testimony are for use in ARCO's pending suit in the District of Massachusetts against CDM International Inc., a subsidiary of CDM Smith, Inc. ("CDM"), which USAID hired as the architect-engineer for the Project. CDM made numerous misrepresentations about the preliminary designs that it prepared for the Project and then conspired with USAID to deflect the blame for its own misconduct to ARCO, resulting in millions of dollars of damages to ARCO.

USAID is a central party to this dispute. It contracted with both ARCO and CDM, brining those parties together, funded the Project and interacted with CDM and ARCO throughout. As a result, it undoubtedly has relevant documents regarding the Project that ARCO cannot obtain elsewhere. Regrettably, rather than respond, USAID has engaged in weeks of delays. Despite the clear relevance of the requested documents and testimony to this litigation

B4985474.1

and ARCO's efforts to significantly narrow the Subpoenas, USAID has thus far refused to commit to producing a single document or even provide ARCO a timetable on which it might produce documents. ARCO faces a May 31, 2019 document discovery cutoff in its case against CDM, and ARCO and CDM are scheduled for a Court-ordered mediation on July 26. Despite its best efforts to resolve this dispute and avoid burdening the Court, USAID's delays and unwillingness to make any commitments have left ARCO with no other choice.

USAID has offered two reasons for its refusal to comply with the Subpoenas, neither of which is permissible. It first contended that ARCO failed to comply with USAID's *Touhy* regulations. ARCO did comply, but, in any event, these regulations do not provide an independent basis to withhold documents or testimony under Rule 45. USAID has also asserted that complying with ARCO's requests would impose an undue burden on its allegedly short-staffed Salvadoran mission because documents should be obtained from CDM in the first instance. ARCO, however, has narrowed the document subpoena to cover <u>only internal USAID communications concerning five topics</u>. While the original subpoena was appropriate in light of USAID's role on the Project, the narrowed requests are more than reasonable and USAID should be required to comply on a reasonable timeframe. Accordingly, ARCO requests that the Court order USAID to (1) produce all non-privileged documents that are responsive to ARCO's narrowed requests within 10 days of the Court's order and (2) cause a USAID representative witness with knowledge of the topics set forth in ARCO's Rule 30(b)(6) notice to appear for a deposition on or before June 30, 2018.

## BACKGROUND

In early November 2018, ARCO filed two related complaints: (1) against USAID in the Court of Federal Claims on November 7, 2018 (Case No. 18-cv-01730-PEC) (the "Court of

B4985474.1

Claims Case") and (2) against CDM in the District of Massachusetts on November 9, 2018 (18-cv-12348-PBS) (the "CDM Case").[1] *See* Declaration of Michael Licker ("Licker Decl.") at Exs. A and B. On January 24, 2019, the Court in the CDM Case held a hearing on CDM's motion to dismiss a single count of the complaint and an initial scheduling conference. *Id.* at ¶ 4. Following the scheduling conference, the Court entered a scheduling order that included a May 31, 2019 close of document discovery, a late July 2019 mediation date and a September 6, 2019 close of fact discovery. *Id.* at Ex. C.

Additionally, because the two cases share substantial factual overlap, on January 8, 2019, counsel for ARCO contacted the DOJ lawyer representing USAID in the Court of Claims Case to discuss coordinating discovery in the two cases, specifically in an effort to minimize any burden on USAID and to avoid needless duplication between the two cases. *Id.* at ¶ 5. Counsel for ARCO and USAID then had multiple phone conversations during February and early March 2019. *Id.* During those conversations, counsel for USAID stated that it would be seeking an additional two-week extension to answer ARCO's complaint in the Court of Claims Case (in addition to the 60-day extension it had already received) and that it was not in position to discuss the coordination of discovery because additional time was needed to review ARCO's complaint and that discussion of any discovery matters would not be appropriate until after USAID filed an answer.[2] *Id.* at ¶ 5, Ex. D.

---

[1] The cases were filed separately due to the respective courts' jurisdictional requirements. The Court of Federal Claims has exclusive jurisdiction over contractual claims against the United States, but does not have jurisdiction over related claims against private parties. ARCO is not aware of any method for consolidating the cases.

[2] ARCO consented to an initial 60-day extension for USAID to respond to its complaint until March 8, 2019, and then an additional 14-day extension until March 22, 2019. USAID moved to dismiss four counts of ARCO's complaint, and in response, on March 29, 2019, ARCO filed an amended complaint that removed those counts. USAID then sought and received a 31-day extension to respond to ARCO's amended complaint until May 13, 2019. As a result, the Court of Claims Case has fallen substantially behind the CDM Case.

B4985474.1

On March 7, 2019, after it became clear that USAID was unwilling to discuss the coordination of discovery and after DOJ counsel for USAID declined to accept service of a subpoena, ARCO caused the Subpoenas to be served upon USAID. *Id.* at ¶¶ 5-6, Ex. E. The first subpoena requested the production of documents relevant to ARCO's claims against CDM and had a return date of March 28. *Id.* at Ex. E. The second requested that USAID designate a representative to be deposed on behalf of USAID. *Id.*

On March 14, 2019, internal counsel for USAID (a lawyer in USAID's general counsel's office, not DOJ) sent ARCO a letter indicating that it was "returning" the Subpoenas because of ARCO's alleged failure to comply with USAID's *Touhy* regulations. *Id.* at Ex. F. That letter did not assert other objections. *Id.* On March 19, ARCO responded to USAID's letter, noting that service of the Subpoenas was valid and indicating ARCO's willingness to discuss both the scope of the Subpoenas and the time needed for USAID to respond. *Id.* at Ex. G. On March 22, 2019, USAID sent a second letter raising other objections to the Subpoenas, but agreeing to meet and confer. *Id.* at Ex. H. On March 25, counsel for ARCO and USAID spoke by phone. *Id.* at ¶ 10. Counsel for USAID indicated that USAID would not consider responding to the Subpoenas unless ARCO provided information set forth in USAID's *Touhy* regulations, including a written summary of the information sought, its relevance to the proceeding with which it was served and why the information sought is unavailable by any other means or from any other sources. *Id.* When counsel for ARCO suggested that the D.C. Circuit had made clear that government agencies are subject to Rule 45 like all other litigants and that an agency's *Touhy* regulations are not an independent basis to withhold documents, counsel for USAID indicated that USAID might seek to transfer any motion to compel to the District of Massachusetts. *Id.*

In an effort to avoid a dispute and move the ball forward, on March 28, 2019, ARCO provided USAID with the requested information and also extended USAID's deadline to respond to the document subpoena by an additional two weeks until April 11, 2019. *Id.* at Ex. I. That date passed without any response from USAID. *Id.* at ¶¶ 11-12. On April 16, 2019, not having received a further response from USAID, ARCO again requested to meet and confer prior to involving the Court. *Id.* at ¶ 12. On April 18, 2019, USAID responded by letter in which it asserted that ARCO's requests needed to be narrowed in light of the dismissal of one of its seven claims in the CDM Case and accused ARCO of attempting to get advance discovery for the Court of Claims Case. *Id.* at Ex. J.

The parties held a second meet and confer on April 23. *Id.* at ¶ 13. During that call, ARCO agreed to narrow the document subpoena to cover only USAID's internal communications and documents and its communications with Salvadoran government agencies concerning five topics,[3] all of which are central to its case:

1. Communications and documents concerning CDM's preliminary designs, including the completeness as well as any defects and deficiencies during all phases of the Project, including the decision to classify the defects as differing site conditions;

2. Communications and documents concerning delays in approving documentation submitted by ARCO or delays in issuing other necessary approvals to ARCO during the Project;

3. Communications and documents concerning the extensions of CDM's contract for the Project and the allocation of funds to CDM for such extensions;

---

[3] With respect to communications and documents between USAID and CDM, ARCO agreed to exhaust all reasonable efforts to obtain them from CDM, but reserved its rights to come back to USAID in the event CDM does not have certain relevant documents. ARCO also proposed to USAID that it did not need USAID to produce documents and communications between USAID and ARCO, provided that USAID agreed to work with ARCO on an appropriate stipulation concerning document authenticity if needed for trial. ARCO repeatedly stressed its desire to proceed efficiently and willingness to compromise to minimize burden, consistent with ARCO's ability to vindicate its rights against CDM at trial in Massachusetts should that become necessary. While ARCO is willing to again agree to these limitations for purposes of this motion, it reserves all rights to seek to obtain these documents from USAID (either voluntarily or by motion) at a later time should it become necessary.

B4985474.1

4. Communications and documents concerning the review, evaluation, analysis or assessment of monies owed to ARCO or monies withheld from ARCO; and

5. Either documents sufficient to show the last-known residential address and country of citizenship for Ross Hicks, Alejandro Maceda and Joseph Terrazas or an agreement to accept service of deposition subpoenas on behalf of these individuals.

*Id.* at ¶ 13, Ex. K. ARCO additionally reiterated its request that, pursuant to the deposition subpoena, USAID make a witness available with knowledge of the topics set forth in the accompanying Rule 30(b)(6) notice on a reasonable timetable. *Id.*

ARCO also explained during the call, and in a follow-up email, why these requests are relevant to its claims. *Id.* at Ex. K. Because in a prior call counsel for USAID had indicated that it might seek to transfer any motion to compel to Massachusetts, ARCO requested that USAID assent to ARCO filing the motion to compel in Massachusetts should motion practice become necessary. *Id.* at ¶ 13, Ex. K. Counsel for USAID agreed to provide an update on all of the above by Friday, April 26. *Id.*

On April 26, counsel USAID indicated that USAID "had internal meetings and will continue to meet and discuss in the coming days." *Id.* at Ex. L. The email further stated that counsel could not provide a "specific time in which a more substantive response will be provided," and that while USAID might be able to respond to "some" of ARCO's requests, more time was required "to fully evaluate our capabilities and a timeframe that would be achievable." *Id.* USAID thus refused to commit to producing any documents or even to a timeframe for when it will tell ARCO what documents it can produce and when it can produce them. On April 29, ARCO again requested that USAID consent to ARCO filing this motion in Massachusetts if USAID still intends to transfer it there. *Id.* On May 1, USAID responded that "document collection process is underway, but it is a complex and lengthy process." *Id.* In other words, USAID once again refused to provide any timetable for its document production. It also refused

to take a position on where the motion should be heard, leaving ARCO in the position of filing in this Court only to have this motion transferred to Massachusetts, causing even further delay. *Id.*

## ARGUMENT

### I. Rule 45 Governs Enforcement of the Subpoenas.

It is well-settled in the D.C. Circuit that "any opposition to the subpoena must derive from an independent source of law such as a governmental privilege or the rules of evidence or procedure." *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (citing 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 45.05[1][b] (3d ed. 2006); *see also Yousuf v. Samantar*, 451 F.3d 248, 257 (D.C. Cir. 2006) (holding that federal agencies are treated as "person[s]" within the meaning of Rule 45, and therefore are bound to comply with properly-issued subpoenas). As such, *Touhy* regulations do not provide a federal agency with an independent privilege to refuse to comply with properly-issued subpoenas. *See Watts*, 482 F.3d at 509.

The D.C. Circuit has made clear that district courts should apply the Federal Rules of Civil Procedure in determining whether the information sought by the subpoena is privileged or may otherwise be withheld by a federal agency. *See id.* at 510 (remanding case to district court to determine whether "the SEC's privilege and undue burden assertions may be reviewed . . . under the standards set forth in Federal Rule Civil Procedure 45," notwithstanding the agency's *Touhy* regulations). Indeed, the text of the statute that gives rise to USAID's *Touhy* regulations itself provides that "[t]his section does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301. As such, USAID is obligated to respond to the Subpoenas just as any private litigant would and the Court must evaluate its refusal to respond within the Rule 45 framework. *See Singh v. S. Asian Soc'y of the George*

B4985474.1

*Wash. Univ.*, CA No. 06-574 (RMC), 2007 U.S. Dist. LEXIS 37718, at *10-14 (D. D.C. May 24, 2007) (analyzing DHS' claim that certain subpoenaed documents were protected by the law enforcement privilege in order to determine whether DHS had to comply with subpoena); *SEC v. Selden*, 484 F. Supp. 2d 105, 107 (D. D.C. 2007) ("*Touhy* in no way stands for the proposition that agency regulations alter the procedures set forth in the Federal Rules of Civil Procedure or that agency regulations can preclude the production of documents 'that are relevant to a judicial proceeding.'")); *In re Apollo Grp., Inc. Sec. Litig.*, Misc. Action No. 06-558 (CKK), 2007 U.S. Dist. LEXIS 22045, at *18-19 (D. D.C. Mar. 12, 2007) (rejecting DOE's argument that Apollo's motion to compel should be denied for failure to comply with DOE's *Touhy* regulations and proceeding to analyze whether materials sought by Apollo were protected under any applicable privilege).

## II. The Subpoenas Are Narrowly Tailored to Seek Relevant Information That Is Only Available from USAID.

Because the Federal Rules of Civil Procedure apply to this motion, "the scope of discovery permitted ... is broad, and 'parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.'" *In re Apollo Grp., Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 22045 at *25-26 (quoting Federal Rule of Civil Procedure 26(b)). ARCO's requests easily meet this relevance standard. USAID in fact could not have played a more central role on the Project. It entered into separate contracts with both CDM and ARCO and served as the bridge between them. Licker Decl. Ex. B at ¶¶ 17-18, 37-38. It directly worked with CDM to select ARCO as the design-build contractor for the Project, engaged CDM to help USAID oversee ARCO's work on the Project and then conspired with CDM to deflect blame for CDM's repeated misrepresentations and errors to ARCO. Licker Decl. Ex. B at ¶¶ 18, 23-25, 86-93. While not a party to this action (there are two separate actions only as a result of

B4985474.1

unique jurisdictional rules preventing both USAID and CDM from being defendants in the same case), USAID's conduct goes to the heart of the CDM Case.

Despite this, USAID has asserted that the discovery sought by ARCO is overly broad, unreasonably burdensome and not calculated to lead to the discovery of admissible evidence. Licker Decl. at Ex. H. It has also asserted that responding to the Subpoenas would force an underfunded Mission "to neglect the humanitarian assistance work it does." *Id.* at Ex. J. While ARCO disagrees that its original documents requests were overbroad in light of the central role that USAID played on the Project, it has substantially narrowed the requests to focus on internal USAID documents and communications and USAID communications with the Salvadoran government concerning five topics. These documents are all unavailable from any other source. Not only are these requests narrowly tailored, but, as set forth below, they each directly relate to central allegations in ARCO's complaint against CDM:

1. Communications and documents concerning CDM's preliminary designs, including the completeness as well as any defects and deficiencies during all phases of the Project, including the decision to classify the defects as differing site conditions.

One of ARCO's primary claims in the CDM Case relates to CDM's misrepresentations concerning the completeness and accuracy of its preliminary designs. Licker Decl. Ex. B at ¶¶ 29-32, 44-50. CDM agreed in its contract with USAID to prepare preliminary designs for the Project that were at least 30 percent complete and ARCO, as the chosen design-build contractor, was required by USAID to rely on those designs. Licker Decl. Ex. B at ¶¶ 19-22, 28, 39-40. CDM repeatedly represented that its preliminary designs were complete and accurate, but they contained multiple defects and deficiencies. Licker Decl. Ex. B at ¶¶ 29-34, 42-50. When ARCO identified these issues, USAID and CDM classified them as differing cite conditions rather than preliminary design defects, which further misled ARCO and resulted in ARCO,

B4985474.1

rather than CDM, bearing the burden for correcting the errors. Licker Decl. Ex. B at ¶¶ 87-93. USAID's internal documents and communications concerning the preliminary designs, as well as concerning design defects and deficiencies are therefore relevant to ARCO's negligent misrepresentation claim with respect to the designs.

> 2. Communications and documents concerning delays in approving documentation submitted by ARCO or delays in issuing other necessary approvals to ARCO during the Project.

During the Project, ARCO was required to obtain approval from USAID and CDM of certain documents prior to moving on to the next phase of the Project. Licker Decl. Ex. B at ¶ 71, 73-76. For example, ARCO was required to prepare final designs based on CDM's preliminary designs, but could not move on to the construction phase of the Project until CDM and USAID approved the final designs. Licker Decl. Ex. B at ¶ 67. CDM and USAID repeatedly delayed in issuing these necessary approvals, which caused ARCO delays in completing the Project. Licker Decl. Ex. B at ¶¶ 68-71, 73-76, 100. USAID and CDM then used these delays as purported justification for withholding payments to ARCO and assessing liquidated damages against ARCO. Licker Decl. Ex. B at ¶¶ 100-101. USAID's internal documents and communications concerning these delays are relevant to ARCO's negligent misrepresentation, tortious interference and civil conspiracy claims against CDM.

> 3. Communications and documents concerning the extensions of CDM's contract for the project and the allocation of funds to CDM for such extensions.

USAID repeatedly extended CDM's contract during the Project. Licker Decl. Ex. B at ¶ 110. The additional amounts that CDM was compensated from these extensions was roughly equivalent to the amounts improperly withheld from ARCO. Licker Decl. Ex. B at ¶¶110-113. USAID's internal documents and communications concerning these extensions and the allocation of funds to CDM are relevant to ARCO's civil conspiracy claims.

B4985474.1

4. Communications and documents concerning the review, evaluation, analysis or assessment of monies owed to ARCO or monies withheld from ARCO.

During the Project, USAID and CDM improperly assessed liquidated damages against ARCO and withheld progress payments to ARCO. Licker Decl. Ex. B at ¶¶ 100-108, 121, 127. USAID and CDM were both involved in the review, analysis or evaluation of these payment decisions. Licker Decl. Ex. B at ¶¶100-108. USAID's internal documents and communications concerning the payment decisions are relevant to ARCO's damages for all of its claims and specifically to facts underlying its civil conspiracy claims.

5. Either documents sufficient to show the last-known residential address and country of citizenship for Ross Hicks, Alejandro Maceda and Joseph Terrazas or an agreement to accept service of deposition subpoenas on behalf of these individuals.

Ross Hicks and Joseph Terrazas both served as USAID's contracting officer on the Project at various times and Alejandro Maceda served as the contracting officer representative. Licker Decl. Ex. B at ¶¶ 42, 92. All three played key roles in the Project. Mr. Maceda, in particular, was at the center of the conspiracy alleged by ARCO. All three are likely to have information regarding ARCO's contracts with USAID, ARCO's performance under its contracts with USAID, USAID's interactions with ARCO, USAID's interactions with CDM regarding both ARCO's contracts with USAID and CDM's contact with USAID, and actions taken by USAID and CDM to interfere with ARCO's performance under those contracts. These individuals are also likely to have information concerning actions taken in furtherance of the conspiracy by USAID that would not be available from other sources. ARCO seeks either their last-known residential address or that USAID agree to accept service of deposition subpoenas on their behalf (reserving all rights to object the subpoenas on grounds other than service). USAID has not even provided its position with respect to this request.

B4985474.1

### III. USAID Should be Ordered to Immediately Produce Responsive Documents

ARCO originally served the Subpoenas on March 11 with a March 28 return date on the document subpoena. Licker Decl. Ex. E. USAID has already delayed the process by more than six weeks. While in its latest communications to ARCO, USAID for the first time indicated that it was actively searching for (some) responsive documents, it has refused to put a timetable on its search or even tell ARCO which categories of documents it intends to produce. *Id.* at Ex. L. It also has not taken a position at all with respect to ARCO's deposition subpoena or its request that USAID accept service of deposition subpoenas for three individual employees. *Id.* It likewise has refused to provide a position regarding whether it wants this motion heard in this Court or in the District of Massachusetts, even though it was USAID's counsel who first suggested that USAID might seek a venue transfer. *Id.* This will all lead to further delay, which ARCO can ill afford in light of the May 31 close of document discovery in the CDM Case.

USAID's only purported justification for the delays and lack of information is its lack of resources. As an initial matter, ARCO served the Subpoenas weeks ago and USAID apparently elected to ignore them and not begin the process of searching for documents until very recently. Moreover, USAID is a large government agency and its resources dwarf those of ARCO, which is a small, family-run construction business in El Salvador. Licker Decl. Ex. B at ¶¶ 11-14. ARCO has already endured years of delays going through the required equitable adjustment process with USAID, during which USAID requested numerous extensions, and cannot afford further delays in prosecuting its case against CDM.

### CONCLUSION

For the foregoing reasons, ARCO respectfully requests that the Court grants its motion to compel and order USAID to: (1) produce all non-privileged documents that are responsive to

B4985474.1

ARCO's narrowed requests set forth herein within 10 days of the Court's order and (2) cause a corporate representative with knowledge of the topics set forth in ARCO's Rule 30(b)(6) notice to appear for a deposition on or before June 30, 2018.

ARCO INGENIEROS, S.A. DE C.V.

By its attorneys,

/s/ John Marston
John Marston (D.C. Bar No. 493012)
jmarston@foleyhoag.com
FOLEY HOAG LLP
1717 K Street N.W.
Washington, DC 20006
Telephone: (202) 223-1200
Facsimile: (202) 785-6687

May 6, 2019

B4985474.1